**P. GROSSMAN A PROFESSIONAL LAW CORP.**
Dennis A. Grossman, Esq. (Cal. Bar #230047, NY Bar #2847150)
Jim A. Trevino, Esq. (Cal. Bar #237795)
1901 E. Shields Ave., Suite 124
Fresno, California 93726
Telephone No.: (559) 221-2261
Facsimile No.: (559) 226-3517

Attorneys for: **SALVADOR MACIEL JR.**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SALVADOR MACIEL JR.,** <br><br> Plaintiff, <br><br> v. <br><br> **CONDOLEEZZA RICE, Secretary of State of the United States,** <br><br> Defendants. | **CASE NO: 1:07-CV-01231-LJO-DLB** <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION** <br><br> Date: December 12, 2007 <br> Time: 8:30 a.m. <br> Courtroom: Four (4) <br> Honorable Lawrence J. O'Neil |

## I.
## BRIEF FACTUAL BACKGROUND

Plaintiff was born on June 16, 1962 in Mountain View, California (*See Plaintiff's Birth Certificate* - "Exhibit A"). Accordingly, Plaintiff is a natural born citizen of the United States of America. Plaintiff's father was a lawful permanent resident of the United States and, as a child, he and his family moved back and forth between California and Mexico. Thus, he was raised, intermittently, in the United States and Mexico.

Plaintiff has tried on various occasions to obtain a United States passport. On or about 1985, the Plaintiff applied for a United States Passport at the San Jose United States Post Office in San

1  Jose, California. Having received no response on the application, the Plaintiff applied again on or
2  about 1997 in Madera, California. On or about 1998, Plaintiff contacted the Passport Office to
3  inquire into the status of his application. At that time, Plaintiff was informed that his records were
4  destroyed and his application was abandoned.
5        On or about 2002, the Plaintiff filed again for a United States Passport. Again he did not
6  receive any response from the Passport Office. Therefore, Plaintiff sent a letter (prepared by a
7  notary) to the Passport Office to inquire into the status of the 2002 application. A short time later,
8  the Plaintiff received a letter with an interview date at the Fresno, California Passport Office.
9  Plaintiff attended the scheduled interview, during which he was interrogated for over two (2) hours,
10 threatened, and forced to sign various documents.
11       At the interview, the Plaintiff was told that there was another person that was claiming to be
12 the person identified in his birth certificate. Although the Plaintiff informed the Defendant that he
13 was the victim of identity theft, the Passport officials told him that it was his responsibility to rectify
14 the situation. The officer conducting the interview advised the Plaintiff that he would not be given
15 a United States Passport unless he could conclusively prove that he was the person identified in his
16 birth certificate. Although Plaintiff possessed and produced a valid California drivers license, he
17 was informed by his interviewer that he would need to obtain school transcripts and a copy of his
18 name and face from his school yearbooks.
19       Finally, the Plaintiff was informed by the officer conducting the interview that he applied for
20 a passport too many times and he could not submit any additional applications. He was expressly
21 instructed not to apply for a passport again.
22       Having been intimidated by the 2002 interview and having difficulty obtaining and
23 understanding the request for additional information, the Plaintiff retained the law firm of Robert
24 W. Yarra to assist him with the matter. On June 24, 2004, Plaintiff and his attorney went to the U.S.
25 Postal Office on E Street in Fresno, California. Upon information and belief, the Plaintiff was again
26 denied the opportunity to file an application for a passport. In support of the previously filed
27
28

1 application, Plaintiff had obtained some school records and his attorney had helped prepare sworn
2 affidavits by the Plaintiff's mother.
3       The Plaintiff's attorney was directed to speak, by telephone, to Mr. Richard Macias, who was
4 the officer in charge of Plaintiff's passport application at the San Francisco U.S. Passport Office.
5 Officer Macias told the Plaintiff's attorney that the affidavits and school records were insufficient,
6 and he recommended, *inter alia*, that the Plaintiff obtain certified educational transcripts from the
7 school or schools that he attended as a child during the time he lived in Mexico.
8       Accordingly, on several occasions, Plaintiff tried to obtain the Mexican school records.
9 However, Plaintiff was informed by the Mexican school officials that it was impossible to obtain the
10 requested information.
11       Although Plaintiff has been denied his passport on the basis of insufficient proof of identity,
12 during this same period, the Plaintiff has been able to petition for, and procure, lawful permanent
13 resident status for his wife in 1997 and his mother in 1989.
14       Moreover, the Plaintiff's wife became a United States citizen in 2004, and ironically, she
15 applied for, and received, a United States passport in 2005.
16       Therefore, having been told that he could not file another passport application, in August
17 2006, Plaintiff retained undersigned counsel to initiate the pending action. Also in August 2006, in
18 anticipation of litigation, Plaintiff filed a Freedom on Information Act (FOIA) Request, requesting
19 information regarding Plaintiff's passport applications. Not having received any records whatsoever
20 or any action on his passport applications, and instructed by the Passport Office officials not to file
21 any more passport applications, Plaintiff initiated this action.
22 ///
23 ///
24 ///
25 ///
26
27
28

# II.

# ARGUMENT

## A. JURISDICTION ISSUES.

### 1. Jurisdiction Under the Mandamus Act.

Defendant asserts that Plaintiff cannot establish jurisdiction under the Mandamus Act, 27 U.S.C. § 1361. The Defendant argues that mandamus claims may not be raised to challenge a discretionary act and that such actions should be dismissed for lack of subject matter jurisdiction.

However, whether or not the issuance of a passport is a discretionary decision does not affect the Plaintiff's request that his passport application be adjudicated. Although the Plaintiff was told on numerous occasions that his passport applications were abandoned, he was most recently told that he was not permitted to file any more passport applications.

Under 28 U.S.C. § 1361, district courts have original jurisdiction to compel an officer of the United States to perform his/her duty. While the duty is often mandatory or ministerial, the duty may also be in the exercise of discretion. Although an officer may have discretion to adjudicate an application, it has a non-discretionary duty to process the application. Failure to perform such duties can be contrary to law, the remedy for which lies with mandamus. Davis v. Schultz, 453, F.2d 497, 502 (3rd Cir. 1971); Naporano Metal and Iron Company v. Secretary of Labor, 529 F.2d 537 (3rd Cir 1976). Jurisdiction exists to challenge a U.S. official's authority to "take or fail to take an action as opposed to a decision taken within…discretion." Patel v. Reno, 134 F.3d 929 (9th Cir. 1997). At this time, Plaintiff is not challenging a decision within the discretion of the officer, but challenging the Defendant's failure to act or failure to make a decision on his passport application. It is a distinction between the duty to take some discretionary action as opposed to the actual discretionary decision itself.

The Plaintiff has a clear right to have his passport application adjudicated by the Defendant. 22 U.S.C. § 213 provides that "before a passport is issued to any person by or under the authority of the United States such person shall subscribe to and submit an application…." 22 U.S.C. § 214

provides:

>There shall be collected and paid into the Treasury of the United States a fee, prescribed by the Secretary of State by regulation, for the filing of each application for a passport (including the cost of passport issuance and use) and a fee, prescribed by the Secretary of State by regulation, for executing each such application....

It is untenable for the government to charge a fee for the adjudication of a passport applications and then argue that it has no duty to adjudicate a properly filed application.

In this case, the Defendant contends in his motion to dismiss that all of the Plaintiff's passport applications have been noted as "abandoned" and that no current application is currently pending with the Department of State. Declaration of Richard Macias in Support of Defendant's Motion to Dismiss ("Macias Declaration") at ¶¶ 4-7. More specifically, the Defendant asserts that the Plaintiff's most recent application, filed in 2002, was noted as abandoned on August 1, 2002. Id. at ¶ 6. However, approximately 2 years after this date, the Plaintiff's attorney held discussions concerning the 2002 applications with Mr. Macias, the Officer in Charge at the San Francisco Passport Office. During that conversation, the Plaintiff's lawyer was told to submit additional documentation in support of that application. In addition, the Plaintiff was told that he was not permitted to submit any additional passport applications.

Even if the Plaintiff's applications were all abandoned and he were entitled to submit additional applications, the passport officials have established a pattern of nullifying Plaintiff's applications by requesting the production of an unreasonable amount of additional documentation (the Plaintiff has always submitted a certified copy of his birth certificate) and then noting the applications as "abandoned." Therefore, the Defendant extinguishes the Plaintiff's applications without clearly rendering a "final administrative denial" that is required for the Plaintiff to seek declaratory relief pursuant to 8 U.S.C. § 1503.

8 U.S.C. § 1503 permits any person that claims a right or privilege as a national of the United

1  States and is denied such right or privilege by any department or independent agency, or official
2  thereof, upon the ground that he is not a national of the United States, to institute an action for
3  declaratory relief pursuant to 28 U.S.C. § 2201. However, such an action may only be instituted
4  within five years after the final administrative denial of such right or privilege. In this case, Plaintiff
5  is entitled to have his passport application adjudicated so that he may initiate action pursuant to 8
6  U.S.C. § 1503.
7      In summary, (1) Plaintiff has a clear right to have his passport application adjudicated, (2)
8  the Defendant has a clear duty to adjudicate Plaintiff's passport application; and (3) no other
9  adequate remedy is available. Therefore, the relief of mandamus is warranted, for which the Court
10 acquires subject matter jurisdiction to hear the claim.
11     **2.    Jurisdiction Under 28 U.S.C. § 1331 and 5 U.S.C. §§ 701 et seq. (the "APA").**
12     The Defendant asserts two arguments why the Court does not have jurisdiction under 28
13 U.S.C. § 1331 (federal question) combined with the APA. First, the Defendant asserts that since the
14 Plaintiff's applications were marked as abandoned, they were not subject to a decision or final
15 agency action, which the Defendant claims is required pursuant to the 5 U.S.C. §§ 701 et seq.
16 Second, the Defendant asserts that because the Plaintiff's applications were noted as "abandoned,"
17 then the Plaintiff cannot identify any discrete action that the Defendant is required to take.
18     First, this discussion addresses the Defendant's assertion that the APA is limited to "final
19 agency action" for which no other remedy is available.
20     The Defendant argues that Rivera v. Albright, 76 F.Supp. 862 (N.D Ill. 1999) stands for the
21 proposition that "the marking of an application as abandoned is not a decision or a final agency
22 action regarding the adjudication of that application." However, the Defendant's reliance on Rivera
23 v. Albright is misplaced. Like this case, the Rivera Court was dealing with a passport applicant that
24 filed multiple applications for a United States passport. Specifically, the applicant in Rivera filed
25 an application in 1993, 1994, and 1998. The applicant received a request for additional evidence
26 with respect to the 1993 application. However, the applicant's travel plans changed, and therefore,
27
28

1  the applicant neglected to respond with the information requested. Accordingly, his application was
2  noted as abandoned. However, the applicant received a denial letter with respect to the 1998
3  passport application. Accordingly, the applicant initiated an action for declaratory relief pursuant
4  8 U.S.C. § 1503, which requires that a claim be brought within five (5) years of the final
5  administrative denial. The Department of State attempted to argue that the applicant's claim was
6  time-barred because it was initiated more than five years after the applicant's first application in
7  1993 that was noted as abandoned. The Court declined to address the issue as to whether the
8  applicant could have brought suit under 8 U.S.C. § 1503 in 1993. The court merely decided that the
9  marking of an application as abandoned under the circumstances surrounding the 1993 application
10 did not constitute a final agency action for purposes of 8 U.S.C. § 1503.
11     The Defendant cites Gallo Cattle Company v. U.S. Department of Agriculture, 159 F.3d
12 1194, 1196 (9th Cir. 1998) for the definition of "final agency action." Agency action is "final" if a
13 minimum of two conditions are met: "First, the action must mark the consummation of the agency's
14 decision making process…it must not be of a merely tentative or interlocutory nature. And, second,
15 the action must be one by which rights or obligations have been determined, or from which legal
16 consequences will flow."
17     In this case, the Defendant made significant attempts to reply to the request for additional
18 information. The applicant appeared for a two (2) hour interview and, eventually, returned with his
19 lawyer, bearing school documents and affidavits. Most significantly, however, the Defendant was
20 told, on more than one occasion, that he would not be permitted to submit any further applications.
21 Therefore, the Defendant's application must be construed as constructively denied on or about June
22 2004 when Officer Macias required the Defendant to present unattainable school records from
23 Mexico and, at the same time, reiterated to the Defendant's counsel that he was not permitted to
24 submit any additional applications.
25     Accordingly, the requirements set forth in Gallo Cattle Company are satisfied because, in
26 effect, the Department of State (1) established circumstances whereby there would be no possible
27
28

1  further action on the application and (2) the Defendant was forever precluded from traveling abroad.

2  In this case, it would be unreasonable to require the Plaintiff do obtain a "final agency decision" in

3  order to obtain jurisdiction where the relief sought is to compel agency action to render a "final

4  agency decision."

5        Defendant also asserts that the Plaintiff "has not identified, and cannot identify, a discrete

6  action that defendant is required to take."  However, the Plaintiff asserts that the Defendant is

7  required to adjudicate Plaintiff's passport application pursuant to 22 U.S.C. §§ 213 and 214. The

8  Defendant should not be permitted to avoid this duty by requiring unreasonable document production

9  and then (1) labeling the application abandoned and (2) prohibiting the Plaintiff from filing

10  additional applications.

11  **B.**  **SUFFICIENCY OF PLAINTIFF'S CLAIM UNDER RULE 12(b)(6).**

12        Defendant asserts that the Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6)

13  because the Plaintiff has failed to state a claim upon which relief can be granted. Specifically, the

14  Defendant states that "the act that Plaintiff seeks to compel by writ of mandamus cannot be described

15  as ministerial, plainly prescribed or free from doubt."

16        As discussed above, 22 U.S.C. § 213 provides that "before a passport is issued to any person

17  by or under the authority of the United States such person shall subscribe to and submit an

18  application...." 22 U.S.C. § 214 provides:

19        There shall be collected and paid into the Treasury of the United

20        States a fee, prescribed by the Secretary of State by regulation, for the

21        filing of each application for a passport (including the cost of passport

22        issuance and use) and a fee, prescribed by the Secretary of State by

23        regulation, for executing each such application....

24        The Plaintiff paid his required fees.  It is untenable for the government to charge a fee for

25  adjudication of a passport application and then argue that it has no duty to adjudicate a properly filed

26  application.  Plaintiff seeks an adjudication, which is ministerial.

1  Plaintiff's claim is clear and certain: adjudication of his passport application. The
2  Defendant's duty is ministerial: adjudication of his passport application. Finally, there is no other
3  adequate remedy available: the Plaintiff requires a clear "final administrative denial" so that he may
4  seek declaratory relief pursuant to 8 U.S.C. § 1503.

6  Dated: November 20, 2007

Respectfully Submitted by,

P. Grossman, a Professional Law Corp.

/s/ Jim A. Trevino
Jim A. Trevino, Esq.
Dennis A. Grossman
Attorneys for Plaintiff

"Exhibit A"

# CERTIFICATE OF LIVE BIRTH
## STATE OF CALIFORNIA—DEPARTMENT OF PUBLIC HEALTH

| Field | Value |
|---|---|
| 1a. NAME OF CHILD—FIRST NAME | SALVADOR |
| 1b. MIDDLE NAME | (blank) |
| 1c. LAST NAME | MACIEL JR. |
| 2. SEX | MALE |
| 3a. THIS BIRTH—SINGLE, TWIN, OR TRIPLET | SINGLE |
| 3b. IF TWIN OR TRIPLET, THIS CHILD BORN 1ST, 2ND, 3RD | (blank) |
| 4a. DATE OF BIRTH—MONTH, DAY, YEAR | JUNE 16, 1962 |
| 4b. HOUR | 10:40 P |
| 5a. PLACE OF BIRTH—NAME OF HOSPITAL | EL CAMINO HOSPITAL |
| 5b. STREET ADDRESS | 2500 GRANT ROAD |
| 5c. CITY OR TOWN | MOUNTAIN VIEW |
| 5d. COUNTY | SANTA CLARA |
| 6a. MAIDEN NAME OF MOTHER—FIRST NAME | SOLEDAD |
| 6b. MIDDLE NAME | (blank) |
| 6c. LAST NAME | CARAVAS |
| 7. COLOR OR RACE OF MOTHER | WHITE |
| 8. AGE OF MOTHER (AT TIME OF THIS BIRTH) | 19 YEARS |
| 9. BIRTHPLACE (STATE OR FOREIGN COUNTRY) | MEXICO |
| 10. MAILING ADDRESS OF MOTHER | (blank) |
| 11a. USUAL RESIDENCE OF MOTHER—STREET ADDRESS | 120 EL CAMINO REAL |
| 11b. IF INSIDE CORPORATE LIMITS | X CHECK HERE |
| 11c. CITY OR TOWN | MOUNTAIN VIEW |
| 11d. COUNTY | SANTA CLARA |
| 11e. STATE | CALIFORNIA |
| 14. NAME OF FATHER—FIRST NAME | SALVADOR |
| 14b. MIDDLE NAME | (blank) |
| 14c. LAST NAME | MACIEL |
| 15. BIRTHPLACE (STATE OR FOREIGN COUNTRY) | MEXICO |
| 16a. PRESENT OR LAST OCCUPATION | LABORER |
| 16b. KIND OF INDUSTRY OR BUSINESS | (blank) |
| 17a. AGE OF FATHER (AT TIME OF THIS BIRTH) | 29 YEARS |
| 13. COLOR OR RACE OF FATHER | WHITE |
| 18a. INFORMANT SIGNATURE | (signature) |
| 18b. ADDRESS | (blank) |
| 19. ATTENDANT'S CERTIFICATION | (signature) D'ESSERE, MD |
| 20. LOCAL REGISTRAR—SIGNATURE | (signature) |
| 21. DATE RECEIVED BY LOCAL REGISTRAR | JUN 22 1962 |
| REGISTRAR'S CERTIFICATION | SUNNYVALE, CALIFORNIA / BILL EVANS |

Certificate number: 3361

---

STATE OF CALIFORNIA }  ss.
County of Santa Clara }

I, LAURIE KANE, Recorder of said County, hereby certify that this document is a true and correct copy of the birth record in my office.

WITNESS my hand and Official Seal this _____ day of _____, 19____

By _____ Deputy